## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MATTHEW D. PINNAVAIA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.  05-1208 (PLF)** |
| | ) | **ECF** |
| **CENTRAL INTELLIGENCE AGENCY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MOTION FOR SUMMARY JUDGMENT BY
## DEFENDANT CENTRAL INTELLIGENCE AGENCY

Pursuant to Fed. R. Civ. P. 56, defendant, the Central Intelligence Agency (CIA),

respectfully moves for summary judgment.  As grounds for this motion, defendant asserts that

there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.[1]

---

[1]  Plaintiff should take notice that any factual assertions contained in the affidavits and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the

A memorandum of points and authorities with accompanying declarations of Scott A. Koch and

David M. Hardy, a statement of genuine issues of material fact not in dispute, and a proposed

order granting the relief sought are attached hereto.

Respectfully submitted,

/s/
_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/
_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

---

adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MATTHEW D. PINNAVAIA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.  05-1208 (PLF)** |
| | ) | **ECF** |
| **CENTRAL INTELLIGENCE AGENCY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE DISPUTE**

_____Pursuant to Local Rule 7.1(h), the defendant hereby submits the following material facts as to which there is no genuine dispute:

1.  By letter dated June 5, 2002, plaintiff made a request under both the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and the Privacy Act (PA), 5 U.S.C. § 552a seeking any and all records pertaining to Plaintiff or DeBeers Consolidated Mines Ltd., the Worldwide Humankind Relations Council, and the Committee of American & Jewish Remembrance to the extent that these entities concerned plaintiff.  Plaintiff also requested any and all records pertaining to plaintiff in relation to any contact or correspondence between the CIA and the Federal Bureau of Investigation (FBI), regarding FBI case 01 mg 1902.  Exhibit A.

2.  By letter dated June 12, 2002, the CIA acknowledged receipt of plaintiff's June 5, 2002, request, assigned it reference No. P-2002-00396 and requested that plaintiff provide either a notarized statement or statement signed under penalty of perjury (28 U.S.C. § 1746) attesting to his identity so that the CIA could begin to process his request.  Exhibit B.

3.  By letter dated June 17, 2002, plaintiff responded to CIA's request for additional

information and submitted a signed declaration pursuant to 28 U.S.C. § 1746.  Exhibit C.

4.  By letter dated June 19, 2002, CIA acknowledged receipt of Plaintiff's June 17, 2002, letter and advised that it had accepted his request for processing pursuant to the FOIA and the PA.  The letter further advised plaintiff that due to the heavy volume of FOIA requests, CIA would be unable to respond within 20 working days and thus, plaintiff had the right to consider this denial of records and appeal to the Agency Release Panel.  Exhibit D.

5.  By letter dated April 16, 2004, the CIA provided a partial response to Plaintiff's request for information.  The CIA's letter enclosed a document that was redacted in accordance with FOIA Exemption (b)(3) and PA Exemption (j)(1).  The letter further noted that the CIA's search had located material requiring coordination with another government agency, and that the CIA would provide a follow-up response to plaintiff after receiving a response from the other government agency.  Exhibit E.

6.  By letter dated November 3, 2004, the CIA completed its response to plaintiff's information request and enclosed the two remaining documents redacted in accordance with FOIA Exemptions (b)(1) and (b)(3) and PA Exemptions (j)(1) and (k)(1).  The letter further notified plaintiff of his right to appeal the CIA's determinations of the Agency Release Panel within forty-five days of the date of the CIA's second response letter.  Exhibit F.

7.  By letter dated November 9, 2004, plaintiff contacted the Agency Release Panel to request any and all CIA records pertaining to himself and contact between the FBI and the CIA.  Plaintiff also inquired whether the three pages of documents received by him from the CIA were "an origination from the FBI."  Exhibit G.

8.  By letter dated November 10, 2004, the CIA notified plaintiff that the Agency Release

Panel had accepted plaintiff's November 9, 2004, letter as an appeal.  Exhibit H.

9.  By letter dated May 12, 2005, the CIA notified plaintiff that "on the basis of FOIA Exemptions (b)(1) and (b)(3) and PA Exemptions (j)(1) and (k)(1) the portions of the three documents that were previously denied must continue to be denied."  Additionally, CIA advised plaintiff that it only released documents that originated from the CIA.  Thus, in accordance with 32 CFR Parts 1900 and 1901, the plaintiff's appeal was denied.  Finally, the CIA informed plaintiff of his right to seek judicial review.  Exhibit I.

10.  On June 20, 2005, plaintiff filed a complaint with this court for declaratory relief.

Respectfully submitted,

/s/
_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

/s/
_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MATTHEW D. PINNAVAIA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No.  05-1208 (PLF)** |
| | ) | **ECF** |
| **CENTRAL INTELLIGENCE AGENCY** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT CENTRAL INTELLIGENCE AGENCY

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b) and the Privacy Act ("PA"), 5 U.S.C. § 552a, plaintiff alleges the Central Intelligence Agency ("CIA") improperly redacted and withheld information to which he is legally entitled in three CIA documents. See Complaint.  In response to his June 5, 2002, FOIA request, the CIA conducted a careful and thorough search for records responsive to Plaintiff's request and determined that the three responsive documents contained certain information exempt from release under FOIA Exemptions (b)(1) and (b)(3), as well as Privacy Act Exemptions (j)(1) and (k)(1).  As the Declaration of Scott A, Koch ("Koch" Decl.), and the Declaration of David Hardy, ("Hardy" Decl.), attached hereto as Exhibit 1 and 2, respectively and incorporated by reference herein, evidence, CIA's search was adequate and its withholding of limited information in the three responsive documents, substantiated by the applicable law.  Accordingly, there is no genuine issue as to any material fact and the information plaintiff seeks is exempt from disclosure under applicable FOIA and PA exemptions.  The CIA, therefore, is entitled to summary judgment in

this action as a matter of law.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background are fully contained in the statement of material

facts to which there is no genuine issue, attached hereto and incorporated herein.

## II.  ARGUMENT

**A.    Summary Judgment Standard**

In a FOIA/PA action, summary judgment is appropriate when, as here, the pleadings,

together with the declarations, demonstrate that there is no genuine issue of material fact in

dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c);

Weisberg v. Department of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The Court exercises *de*

*novo* review to determine whether the Government has properly withheld records under any of

the FOIA's nine statutory exemptions.  See 5 U.S.C. § 552(a)(4)(B); Department of Justice v.

Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).  However, given the

unique nature of FOIA cases, the court accords the agency's declarations substantial weight.  See

Minier v. Central Intelligence Agency, 88 F.3d 769, 800 (9th Cir. 1996) ("the agency may meet its

burden by submitting a detailed affidavit showing that the information logically falls within the

claimed exemptions."); Kamman v. United States Internal Revenue Service, 56 F.3d 46, 48 (9th

Cir. 1995) (District Court must give substantial weight to the agency's affidavits, provided they

are not controverted and that there is no evidence of bad faith on the part of the agency).  Thus,

an agency should prevail on summary judgment based solely on its declarations if they are clear,

specific, and reasonably detailed, and they describe the withheld information in a factual and

nonconclusory manner.  See Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984); Hemingway v.

2

Hughes, 601 F. Supp. 1002, 1004 (D.D.C. 1985) (recognizing that in FOIA cases, summary

judgment does not necessarily hinge on the existence of genuine issues of material fact, but rather

on the sufficiency of agency affidavits).  Once the Court determines that the declarations are

sufficient, it need not inquire further.  Students Against Genocide v. Department of State, 257

F.3d 828, 833 (D.C. Cir. 2001) (In FOIA cases, an agency "is entitled to summary judgment if no

material facts are in dispute and if it demonstrates 'that each document that falls within the class

requested either has been produced . . . or is wholly exempt from the Act's inspection

requirements'.") (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)); see also, Burnes

v. CIA, 2005 U.S. Dist LEXIS 20114 at *2-7 (D.D.C. Sept. 14, 2005) (A court "may award

summary judgment [in a FOIA case] solely on the basis of information provided by the

department or agency affidavits or declarations."); see also, Hayden v. National Sec. Agency, 608

F.2d 1381, 1386-87 (D.C. Cir. 1979).

**B.    THE CIA CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE
        DOCUMENTS**

Regarding the adequacy of the search, an agency can show that it has discharged its

obligations under the FOIA and is entitled to summary judgment by submitting "an affidavit

reciting facts which enable the District Court to satisfy itself that all appropriate files have been

searched."  Church of Scientology v. IRS, 792 F.2d 146, 151 (D.C. Cir. 1986).  "[I]n the absence

of countervailing evidence or apparent inconsistency of proof, affidavits that explain in

reasonable detail the scope and method of the search conducted by the agency will suffice to

demonstrate compliance with the obligations imposed by FOIA."  Perry v. Block, 684 F.2d 121,

127 (D.C. Cir. 1982).

In evaluating the adequacy of a search, courts recognize that agency affidavits "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence of other documents." Grounds Saucer Watch v. Central Intelligence agency, 692 F.2d 770, 771 (D.C. Cir. 1981). Declarations should be "sufficiently detailed," but "the standard, however, is not meticulous documentation of the details of an epic search." Texas Independent Producers Legal Action Ass'n v. internal Revenue Service, 605 F. Supp. 538, 547 (D.D.C. 1984) (quotation omitted); see also Zemansky v. U.S. Environmental Protection Agency, 767 F.2d 569, 571 (9th Cir. 1985) ("In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.") (citation omitted).

In FOIA cases, "the Court's inquiry regarding the adequacy of the search focuses on the search itself, not its results." See Burnes v. CIA, No. 05-242, U.S. Dist LEXIS 20114 at *2-7 (D.D.C. Sept. 14, 2005) (attached), citing Weisberg v. United States Dep't of Justice, 240 U.S. App. D.C. 339, 745 F.2d 121, 126 (D.C. Cir. 1982). To fulfill an agency's obligations under FOIA, " 'the agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents."' Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). But the search need only be reasonable; it does not have to be exhaustive." Miller v. United States Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985). In other words, "[t]he question is not 'whether there might exist any other documents, but rather whether the *search* for those documents was adequate.'" Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original). Merely because an agency is unable to find a particular document a requestor believes that it should have, does not render its search inadequate. Wilbur v. CIA, 355 F.3d 675, 678, (D.C. Cir. 2004); Nation Magazine v. United States Customs Serv., 315 U.S.

4

App. D.C. 177, 71 F.3d 885, 892 n. 7 (D.C. Cir. 1987).

Here, summary judgment should be entered in favor of the CIA because, as Mr. Koch's declaration shows, the CIA conducted a reasonable and adequate search and any information that fell within the class of documents plaintiff requested was either produced or is exempt from disclosure under FOIA. Students Against Genocide v. Department of State, 257 F.3d at 833.

Here, as explained by Mr. Koch, in paragraphs 23 to 34, the CIA conducted a reasonable, diligent, and adequate search. Under his direction and supervision, experienced CIA Information Management Services (IMS) personnel analyzed plaintiff's request and determined what CIA components reasonably might be expected to possess records responsive to his request. Koch Decl. at ¶23.

Based on the nature of the request, CIA officers in the Directorate of Operations and the Directorate of Support, the two directorates who might reasonably be expected to possess responsive documents, were tasked to search for records responsive to plaintiff's request. Koch Decl. at ¶¶24-29; 34. Each component then devised its own strategy to search for responsive records. Id. at 23. Appropriately trained personnel in these directorates and offices thoroughly searched their directorate's or office's records systems as part of their normal responsibilities. Id. at ¶¶ 26-27 . After the tasked directorate located documents in response to the FOIA request, officers carefully reviewed the documents to determine if they did, in fact, respond to the request. Id. at ¶ 30.

Officers also meticulously reviewed the documents to ensure there was no inadvertent release of classified or other exempt information. Koch Decl. at ¶32. Once this time-consuming and labor-intensive process was completed, any responsive documents that were subject to

release were redacted in part and then forwarded to the plaintiff.  Id. at ¶¶ 33; 35-36.

In sum, the undisputed evidence demonstrates that the search conducted by the CIA was reasonable and done in good faith.  The files of each directorate likely to have records responsive to the request were searched.  Id. at ¶34.  Because the Agency has set out detailed facts establishing that the search was reasonable, summary judgment on this point should be granted in favor of the CIA.

## C.    Indices

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for its withholding of responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, [an] agency regularly submits affidavits . . . in support of [its] motion for summary judgment . . ."  Judicial Watch v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  The declaration or affidavit (singly or collectively) is often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564 (1974).  There is no set formula for a Vaughn index.  "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form."  Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997).  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  See also Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988).[1]

_____

[1] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index [or declaration] a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure."  Id.  "The degree of specificity of itemization, justification, and correlation required in a particular case

The purpose of a Vaughn index is "to permit adequate adversary testing of the agency's claimed right to an exemption." NTEU v. Customs, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing Mead Data Central v. United States Dept. of the Air Force, 566, F.2d 242, 251 (D.C. Cir. 1977), and Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974)). "The form of the Vaughn index is unimportant and affidavits providing similar information can suffice." Spirko v. U.S. Postal Service, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) (citing Gallant v. NLRB, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

In the instant case, two declarations have been prepared. One was prepared by Scott A. Koch, of the CIA, who is responsible for managing the FOIA, PA, and Executive Order 12958[2] (EO) Mandatory Declassification Review (MDR) programs in the CIA and is sufficiently familiar with the handling of Plaintiff's FOIA request. See Koch Decl. ¶¶ 1-5. Mr. Koch's Declaration properly identifies the documents responsive to plaintiff's FOIA requests and sets forth the justification for exemptions claimed for the withholding of certain information. In addition, the defendant has submitted the Declaration of Mr. David M. Hardy of the FBI as some of the information contained in the documents originates from the FBI. See Hardy Decl. ¶ 3 and Koch Decl. ¶ 8. The FBI information contained in Exhibit A of the Hardy Declaration was referred to the FBI for review and possible release or denial to Plaintiff pursuant to the FOIA. Hardy Decl. ¶ 4. The FBI reviewed this information and determined that all of the FBI

---

will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dept. of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

[2] Executive Order 12958 was amended by Executive Order 13292, effective March 25, 2003. See Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003). All citations to EO 12958 are to the Order as amended by EO No. 13292.

information is currently classified at the Secret level since release would cause serious harm to national security.  Id.  The FBI advised the CIA of the current classification of this FBI information and requested that the CIA withhold this FBI information from disclosure to plaintiff in its entirety pursuant to exemption (b)(1) of the FOIA.  Id.

The Declarations submitted in support of this motion meet the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), and provide the Court with the requisite basis to grant Defendants' motion for summary judgment.

**D.      THE APPLICABLE FOIA EXEMPTIONS WERE PROPERLY INVOKED**

As stated in the Hardy and Koch Declarations, information was withheld pursuant to FOIA Exemptions (b)(1) and (b)(3) as well PA Exemptions (j)(1) and (k)(1).  As set out more fully below, the assertion of these exemptions is justified under the law.

**1. FOIA Exemption (b)(1)**

Exemption (b)(1) provides that the FOIA's disclosure requirements do not apply to records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(l).  Exemption (b)(1), therefore, "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order."  Military Audit Project v. Casey, 656 F.2d 724, 737 (D.C. Cir. 1981).  In cases where (b)(1) is claimed, the Court "must recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure of a particular classified record."  Salisbury v. United States of America, 690

8

F.2d 966, 970 (D.C. Cir. 1982). Thus, the court should accord "substantial weight… to an agency's affidavit concerning the details of the classified status of the disputed record." Id. If the Agency can show that the information is properly classified and it falls within the exemption, the agency is entitle to summary judgment. Public Citizen v. State Dep't, 276 F.3d 634, 643 (D.C. Cir. 2002) citing Halperin v. CIA, 629 F.2d 144, 147 (D.C. Cir. 1980).

As the Supreme Court has noted, courts should be unwilling to "second guess" the "decisions of the [Director of Central Intelligence (DCI),][3], who must, of course, be familiar with 'the whole picture,' as judges are not." Those decisions "are worthy of great deference given the magnitude of the national security interests and the potential risks at stake." CIA v. Sims, 471 U.S. 159, 179 (1985). "The test is not whether the court personally agrees in full with the CIA's evaluation of the danger – rather, the issue is whether on the whole record the CIA's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility in this field of foreign intelligence in which the CIA is expert and given by Congress a special role." Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982); see also, Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999) ("Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns.")

In the instant case, both Mr. Koch's declaration and Mr. Hardy's declaration demonstrate the information that was withheld in the three responsive documents was properly classified and falls within Exemption (b)(1). See Koch Decl. ¶¶38-58; Hardy Decl. ¶¶15-21. Executive Order 12,958 addresses classification of information relating to intelligence and national security.

---

[3] The DCI is now referred to as the Director of National Intelligence.

Section 1.4 provides that information to be classified includes, *inter alia*, information concerning "intelligence activities . . .intelligence sources or methods, or cryptology" and (d) foreign relations or foreign activities of the United States."   Koch Decl. ¶39.  Section 1.2 of executive Order 12,958 establishes three levels of classification for national security information. Information may be classified as CONFIDENTIAL when the unauthorized disclosure of that information reasonably could be expected to cause damage to national security.  If unauthorized disclosure reasonably could be expected to cause serious damage to national security, then the information may be classified as SECRET.  Finally, if unauthorized disclosure reasonably could be expected to cause exceptionally grave damage to national security, the information may be classified as TOP SECRET. Id., at 40.  Section 6.1(h) of Executive Order 12,958 defines classified national security information as "information that has been determined pursuant to the order or any predecessor order to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form.'  Section 3.1(b) of Executive order 12,958 states, "[i]t is presumed that information that continues to meet the classification requirements under this order requires continued protection."

Information responsive to FOIA and PA requests that has been classified under Executive Order 12,958 is reviewed again to determine whether such information is currently and properly classified.  Id., at ¶¶2, 6, 31, 42, 43.  The CIA has determined that the classified information withheld from Plaintiff continues to meet the standards for classification under Executive Order 12,958, and that the information withheld is properly classified as either CONFIDENTIAL or SECRET because its release could cause damage or serious damage to the national security.  Id., at ¶¶43, 58.

The CIA has also determined that the information withheld on the basis of FOIA

Exemption (b)(1) falls within claimed exemption, Sections 1.4(c) of Executive Order 12,958 i.e.,

the category of information concerning "intelligence activities . . . intelligence sources or

methods or cryptology." Id., at ¶43.  Mr. Koch explains in detail that the information withheld in

this case could lead to, among other things, the revelation of sensitive intelligence activities and

intelligence methods.  Id., at ¶44.  Specifically he explains that disclosure of CIA intelligence

activities could disrupt the ability of the CIA to collect information and would materially damage

intelligence operations.  Id.  Likewise, he explains that the disclosure of CIA methods (means by

which an intelligence agency accomplishes its mission) has the potential to assist foreign

intelligence services and, thereby harm U.S. national security.  Id., at ¶45-46; 50-53.  Methods

includes information regarding secret information collection techniques, capabilities, or

technological devices as well as information concerning certain employee and internal

organization and filing information that relates to cover mechanisms and how records are kept,

among other things.  Id., at ¶48-49.  Cryptonyms and pseudonyms were redacted.  Such is an

intelligence method whereby words and letter codes are substituted for actual names or identities

in order to protect intelligence sources and other intelligence methods.  Specifically the CIA uses

cryptonyms to disguise the true name of a person or entity of operational intelligence interest,

such as a source, foreign liaison service, or a covert project.  The CIA uses pseudonyms, which

are essentially code names, soley for internal CIA communications.  Id., at ¶¶54-58.

CIA also withheld information pursuant to FOIA Exemption (b)(1) based on guidance

from the FBI because information contained within two documents identified as Exhibit A to the

Hardy Declaration originated with the FBI..  Hardy Decl. ¶ 3.  As such, this information was

11

referred to the FBI for review in accordance with the provisions of FOIA. <u>Id.</u>, at 4. The FBI

reviewed this information and determined that all of the FBI information is currently classified at

the Secret level and that release would cause serious harm to the national security. <u>Id.</u> The two

CIA documents which contain FBI information consist of one document consisting of two pages

which is dated June 2, 2002 ("Document 1") and one document consisting of one page which is

also dated June 2, 2002 ("Document 2"). Copies of these two CIA documents are attached to the

Hardy Declaration as Exhibit A. <u>Id.</u>, at ¶ 6. The FBI information in Document 1 is contained in

the paragraphs designated as Paragraph 2 on the first page and Paragraph 4 on the first and

second pages of this document. The FBI information in Document 2 is contained in the

paragraph designated as Paragraph 2 on the first, and only, page of this document. <u>Id.</u>, at ¶ 7.

Copies of these three pages of the two CIA documents addressed in this declaration have been

provided to Plaintiff by the CIA pursuant to his FOIA request to them. The FBI information

contained in these two CIA documents has been withheld from disclosure to plaintiff by the FBI

in its entirety. The exemption asserted by the FBI as justification for withholding this FBI

information from disclosure is Exemption 1 of the FOIA, 5 U.S.C. § 552 (b)(1). <u>Id.</u>, at ¶ 8.

   In order for information to be properly classified it must first satisfy the requirements set

forth in Section 1.1 (a) of E.O. 12958, as amended:

      (1)    an original classification authority is classifying the information;

      (2)    the information is owned by, produced by or for, or is under the control of
            the United States Government;

      (3)    the information falls within one or more of the categories of information
            listed in § 1.4 of this order; and

      (4)    the original classification authority determines that the unauthorized

> disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Id., at ¶ 13.  All of the FBI information in the two CIA documents which were determined to be classified were marked at the "Secret" level, since the unauthorized disclosure of this information reasonably could be expected to cause serious damage to the national security.  See E.O. 12958, as amended, §§ 1.2(a)(2), (a)(3).  Id., at ¶ 14.  In addition all procedural requirements of E.O. 12958 were followed:

> (1)    each document was marked as required and stamped with the proper classification designation;[4]
>
> (2)    each document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O. 12958, as amended, §§ 1.4 (c), and which portions are unclassified;[5]
>
> (3)    the prohibitions and limitations on classification specified in E.O. 12958, as amended, § 1.7, were adhered to;
>
> (4)    the declassification policies set forth in E.O. 12958, as amended, §§ 3.1 and 3.3 were followed; and
>
> (5)    any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958, as amended, were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

Id.  Moreover, with the above requirements in mind, Mr Hardy, in his role as a classification authority for the FBI determined that all of the FBI information contained in these two documents warranted classification at the "Secret" level, pursuant to EO 12958, § 1.4.  This is so because release of this FBI information could reasonably be expected to: reveal intelligence

---

[4]  E.O. 12958, as amended, §§ 1.6 (a) (1) - (5).  In this case, no portions of the FBI information are unclassified.

[5]  E.O. 12958, as amended, § 1.6 (a) (5) (c).

activities or methods and reveal information that would seriously and demonstrably impair

relations between the United States and a foreign government, or seriously and demonstrably

undermine ongoing diplomatic activities of the United States.  EO 12958, § 1.4 (c) and (d).  Id.,

at 15.

Since the FBI and CIA have demonstrated (1) that they followed proper classification

procedures, and (2) that the information withheld pursuant to (b) (1) "logically falls within [a]

claimed exemption," Hayden, 608 F.3d at 1387, summary judgment should be granted as to the

information withheld pursuant to Exemption (b)(1).

**2. FOIA Exemption (b)(3)**

Exemption (b)(3) of the FOIA exempts from mandatory disclosure matters that are:
Specifically exempted from disclosure by statute . . . provided that such statute (A)
requires that the matters be withheld from the public in such a manner as to leave no
discretion on the issue, or (B) establishes particular criteria for withholding or refers to
particular types of matters to be withheld.  5 U.S.C. § 552 (b)(3).

This provision of FOIA was promulgated in recognition of the existence of collateral

statutes limiting the disclosure of information held by the government, and incorporates such

statutes within the exemptions of FOIA.  See, e.g., Baldridge v. Shapiro, 455 U.S. 345, 352-53

(1982); Essential Information, Inc. v. United States Information Agency, 134 F.3d 1165, 1166

(D.C. Cir. 1998); Students Against Genocide, 257 F.3d at 835.  Information is properly withheld

under exemption (b) (3) when it falls within the scope and coverage of a qualifying statute, i.e.

the statute specifically exempts the information from disclosure.  Essential Information, Inc. v.

United States Information Agency, 134 F.3d at 1165-1166.

As with Exemption (b)(1) claims, courts evaluating Exemption (b) (3) claims must accord

substantial weight to the CIA's judgment with respect to the national security considerations at

issue. Gardels v. CIA, 689 F.2d at 1104-1105 ("substantial weight must be accorded to an

Agency's determinations on Exemption (b)(3) claims); Phillippi v. CIA, 655 F.2d 1325, 1332

(D.C. Cir. 1981) (CIA affidavits on Exemption (b)(3) claims are to be accorded "substantial

weight"); Halperin v. CIA, 629 F.2d at 147-148.  Accord Ferry v. CIA, 458 F. Supp 644

(S.D.N.Y. 1978) ("The CIA has greater expertise as to what kind of intelligence-gathering

disclosures would reveal intelligence sources and methods.")

As Mr. Koch's Declaration establishes, two (b) (3) statutes exempt the CIA information

at issue from disclosure.  Koch Decl., at ¶61-62.  First, section 103(c)(7) of the National Security

Act of 1947, as amended ("National Security Act"), codified at 50 U.S.C. § 403-3(c)(7), requires

the protection of intelligence sources and methods from unauthorized disclosure.  Section

103(c)(7) applies without regard to any determination that disclosure of the specific information

would cause damage to the national security.[6]  The Supreme Court has held that this statute is a

"withholding statute" for purposes of FOIA exemption (b)(3).  CIA v. Sims, 471 U.S. 159, 167

(1985).  In Sims, the Court noted the "wide-ranging authority" given to the DCI to protect

intelligence sources and methods, and held that it was "the responsibility of the DCI, not that of

the judiciary, to weigh the variety of complex and subtle factors in determining whether

disclosure of information may lead to an unacceptable risk . . . ." Id. at 180.  Stated otherwise,

"FOIA simply does not apply to material the DCI specifically has exempted on the ground that it

pertains to or could give rise to inferences about intelligence sources and methods."

_____

[6] This is one way in which FOIA Exemption (b)(3) differs from Exemption (b)(1), since national security classification rests on an assessment of the damage to the national security that unauthorized disclosure of Confidential, Secret, or Top Secret information might cause.  See Executive Order 12,958 § 1.2(a), as amended.  Any information that is properly classified on the basis that it relates to intelligence sources and methods is, to at least the same extent, also subject to the Director's statutory obligation to protect such sources and methods.

Knight v. CIA, 872 F.2d 660, 664 (5th Cir. 1989).

In addition, Section 6 of the Central Intelligence Agency Act of 1949, codified at 50 U.S.C. § 403g, as amended, provides that the CIA shall be exempt from the provision of any other law requiring the publication or disclosure of the organization, function, names, official titles, salaries, or numbers of personnel employed by the CIA.  On the basis of this statute and thus under FOIA Exemption (b) (3), CIA organizational information including file numbers, installation locations and identifiers of internal components, as well as document markings indicating the levels of classification of different portions of documents and procedures for and indicators restricting dissemination of information contained in the document, are absolutely protected from disclosure by law and, therefore, were redacted from the requested documents. Koch Decl., at ¶62.  This organizational information was withheld to prevent the public release of CIA structure, organization and procedures, all of which could be used for hostile penetration or manipulation of CIA operations.  Likewise, the Agency has redacted the names and functions of certain CIA employees under the authority of Section 6.  Id.  As Mr. Koch explains, the redacted information contains references to intelligence methods, CIA installations, offices or components that, if disclosed, could provide insight into CIA organization and operations.  Koch Decl., at ¶¶46-58; 63.

Accordingly, the CIA has demonstrated that the information withheld pursuant to FOIA exemption (b)(3) was  properly withheld because it concerns intelligence sources or methods, CIA organizational or functional information that is specifically exempted from disclosure by statute, and tax return information.  5 U.S.C. § 552(b)(3).

### 3.  Privacy Act Exemption (j) (1)

Privacy Act exemption (j) (1), codified at 5 U.S.C. § 552a (j) (1), permits the Director of the CIA to promulgate regulations exempting CIA records from disclosure under the PA.  The Director has promulgated regulations, codified at 32 C.F.R. § 1901.62(3), which exempt information that would "consist of, pertain to, or otherwise reveal intelligence sources and methods" from disclosure under the PA.  Information covered under 32 C.F.R. § 1901.62 (3), is exempt from disclosure under PA exemption (j) (1).  Wheeler v. CIA, 271 F. Supp. 2d 132 (D.D.C. 2003).

As noted in Mr. Koch's declaration, the information withheld from the requested documents relates to intelligence activities, sources and methods, and also contains sensitive cryptologic information.  Koch Decl., at ¶ 65.  As such, this information would "consist of, pertain to, or otherwise reveal intelligence sources and methods," and is therefore protected from disclosure by 32 C.F.R. § 1901.62(3).  Because this information has been exempted from disclosure by regulations promulgated by the Director, the information is also exempt from disclosure pursuant to 5 U.S.C. § 552a (j) (i).

### 4.  Privacy Act Exemption (k) (1)

Privacy Act Exemption (k) (1), codified at 5 U.S.C. § 552a (k) (i), states that the head of any agency may promulgate rules to exempt any system of records within the agency from disclosure if the system of records is subject to the provisions of 5 U.S.C. § 552 (b) (1).  Because the "fundamental question [in determining the applicability of PA Exemption (k) (1)] is whether the requested information is exempt under FOIA [ (b) (1)]," if FOIA Exemption (b) (1) exempts the information, then the information at issue is also exempt from disclosure under PA

17

Exemption (k) (1).  See Wheeler, supra.  As explained in Mr. Koch's declaration, the information

withheld from the requested documents falls within the scope of 5 U.S.C. § 552 (b) (1).  Koch

Decl., at ¶67.

Additionally, the Director of the CIA has promulgated 32 C.F.R. § 1901.63(a), which

provides that information classified pursuant to Executive Order 12,958 is exempt from

disclosure under the PA.  Consequently, the information withheld from the requested documents

is exempt under section (k) (1).

## E.    THE CIA PROPERLY EVALUATED DOCUMENTS FOR SEGREGABILITY

The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); Billington v. Dep't. of Justice, 233 F.3d 581, 586 (D.C. Cir. 2000); Krikorian

v. Dep't. of State, 984 F.2d 461, 466 (D.C. Cir. 1993); Mead Data Cent., Inc. v. United States

Dep't. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The agency must provide a "detailed

justification" to demonstrate that all reasonably segregable information has been released, Mead

Data, 566 F.2d at 261, and show "with reasonable specificity" why a document cannot be further

segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir.

1996).

Moreover, the agency is not required to "commit significant time and resources to the

separation of disjointed words, phrases, or even sentences which taken separately or together

have minimal or no information content."  Mead Data, 566 F.2d at 261, n.55.  Here, the CIA has

met its segregability obligation. First, the CIA has set forth in its sworn declaration that all of the

records responsive to the Plaintiff's FOIA request have been reviewed and all reasonably segregable non-exempt information has been released. Koch Decl. at ¶¶4-5. Second, the Agency's release of documents with the appropriate redactions, rather than withholding these documents, demonstrates that the CIA reviewed all records carefully and determined what portions could be released and what portions needed to be withheld.

For example, in the instances in which the CIA asserted Exemption (b)(1), only the portion(s) of each document that contained the national security information were redacted, rather than withholding the entire document based on that exemption. In this case, the CIA expressly considered the segregability issue and concluded that no additional information could be released to plaintiff. Koch Decl. at ¶¶4-7 . As discussed above, CIA's withholdings are specifically justified in its declaration submitted in support of this motion. The CIA properly concluded that no further information could be released without compromising information exempt under the claimed exemptions. Id.

### III . CONCLUSION

The un-controverted evidence demonstrates that the CIA conducted an adequate search and properly withheld documents exempt under the FOIA. Accordingly, the CIA respectfully requests that this Court grant its Motion for Summary Judgment, and enter final judgment on behalf of the Defendant.

Respectfully submitted,

/s/

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

19

/s/

_____

R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


/s/


_____

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
 (202) 305-1334

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of January, 2006 a copy of the foregoing Motion for

Summary Judgment for Defendant CIA, Statement of Material Facts, Memorandum in Support

thereof, all attachments, and proposed order has been served by first class United States mail,

postage prepaid, to:

Matthew D. Pinnavaia
*Pro se*
1701 Bush Street, 6-P
Oceanside, CA 92054-7137

_____
Heather Graham Oliver
Assistant United States Attorney