IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATHEW D. PINNAVAIA,                )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   CIV. 05-1208 (PLF)
                                    )
CENTRAL INTELLIGENCE AGENCY,        )
                                    )
        Defendant.                  )

## DECLARATION OF SCOTT A. KOCH
## INFORMATION AND PRIVACY COORDINATOR
## CENTRAL INTELLIGENCE AGENCY

I, SCOTT A. KOCH, hereby declare and say:

1. I am the Chief, Public Information Programs
Division (PIPD), Information Management Services (IMS),
Central Information Office, for the Central Intelligence
Agency (CIA). I also am the CIA Information and Privacy
Coordinator (Coordinator). I have held these positions
since August 9, 2004. I have served with the United States
Government for approximately fifteen years and, in addition
to my current positions, I have held other supervisory
positions with the CIA in the fields of records management
and information review and release.

2. In my capacities as Chief, PIPD/IMS, and
Coordinator, I am responsible for managing the Freedom of
Information Act (FOIA), Privacy Act (PA), and Executive

Order 12,958[1] (EO) Mandatory Declassification Review (MDR) programs in the CIA. These responsibilities include directing the searches of CIA records systems pursuant to public requests for records under these programs and coordinating the reviews of any responsive records retrieved in such searches. These review processes include undertaking any intra-agency and inter-agency coordination and referrals[2] necessary in light of the information found in responsive records. As part of my official duties, I ensure that the administrative processing of FOIA requests, including the search, retrieval, analysis, review, redaction, and release of documents, is accomplished in accordance with the law and as efficiently as possible with the personnel and resources available.

3. Through the exercise of my official duties, I am familiar with this civil action. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

---

[1] Executive Order 12,958 was amended by Executive Order 13,292, effective March 25, 2003. See Executive Order 13,292. 68 Fed. Reg. 15,315 (Mar. 28, 2003). All citations to Exec. Order No. 12,958 are to the Order as amended by Exec. Order No. 13,292. See Exec. Order 12958, 3 C.F.R. 333 (1996), reprinted as amended in 50 U.S.C.A. § 435 note at 93 (West Supp. 2004).

[2] A "coordination" occurs when a CIA-originated document contains information from another agency and the CIA contacts that agency to obtain guidance on whether to release or withhold that agency's information. A "referral" occurs when CIA possesses a document that originated with another agency. In such a case, CIA transmits the document to the originating agency for a direct response to the FOIA or PA requestor.

4.   The purpose of this Declaration is to set forth to the extent possible on the public record the bases for the CIA's response to Plaintiff's request for information pursuant to the FOIA and PA.  CIA conducted a reasonable, diligent and responsive search for information responsive to Plaintiff's FOIA/PA request.  I have carefully reviewed all three documents located in response to Plaintiff's request (hereinafter referred to as the "Requested Documents") to determine whether such Requested Documents, or any portion thereof, could be released to Plaintiff.

5.   All reasonably segregable information contained within the three Requested Documents has been released to Plaintiff.  Those portions of the Requested Documents that cannot be released have been redacted.  I have determined that disclosure of the redacted portions of the Requested Documents would risk compromise of classified information and information concerning intelligence activities, sources and methods.

6.   Specifically, disclosure of the redacted information would reveal information that is currently and properly classified pursuant to Section 1.4(c) of Executive Order 12,958, as amended, as its disclosure reasonably could be expected to result in damage to the national security, and will be exempt from automatic

3

declassification under § 3.3(b)(1) of such Executive Order.
Such information is exempt from disclosure pursuant to FOIA
exemption (b)(1) and PA exemption (k)(1).

7.  Disclosure of the redacted information would also
reveal information about the application of intelligence
sources and methods which the Director of the CIA
(Director) is responsible for protecting from unauthorized
disclosure in accordance with 50 U.S.C. § 403-3(c)(7).[3]
This information is exempt from disclosure pursuant to FOIA
exemption (b)(3), as well as PA exemption (j)(1).

8.  Portions of the responsive documents located in
the CIA's files originated with another federal agency, the
Federal Bureau of Investigation (FBI).  The CIA coordinated
these documents with the FBI for its input on the handling
of the information contained therein.  The CIA then

---

[3] Pursuant to the Intelligence Reform and Terrorism Prevention Act of
2004 (the "Act"), Pub. L. No. 108-458, S. 2845 (2004), which amended
the National Security Act of 1947, the Director of National
Intelligence (DNI) is specifically empowered with the authority to
protect intelligence sources and methods.  See 50 U.S.C.A. § 403-1(i).
The Director of the Central Intelligence Agency (DCIA) no longer has,
as the DCI did under 50 U.S.C. § 403-3(c)(7), the statutory authority
to protect such information.  For purposes of this lawsuit, however,
because CIA's FOIA searches were conducted and evaluated before the
effective date of the Act, CIA properly claimed FOIA exemption (b)(3)
pursuant to former 50 U.S.C. § 403-3(c)(7).  But even after the
effective date of the Act, CIA may continue to withhold intelligence
sources and methods under authority of the CIA Act of 1949.
Specifically, Section 6 of the CIA Act provides that CIA shall be
exempt from the "provision of any other laws which require the
publication or disclosure of the organization, function, names,
official titles, salaries, or numbers of personnel employed by the
Agency."  50 U.S.C. § 403g.  To this end, CIA cannot disclose any
information relating to its core function: collection of foreign
intelligence through its intelligence sources and methods.  See id.
Thus, under either statutory authority, CIA may invoke FOIA exemption
(b)(3) to protect intelligence sources and methods.

incorporated the FBI instructions in the CIA's response to Plaintiff. It is my understanding that the FBI has submitted a Declaration to be filed with the CIA's motion for summary judgment in this case to support the redactions made by CIA at FBI's request.

9.  This Declaration is divided into five primary parts. The first part sets forth the procedural history relating to Plaintiff's information request under the FOIA and PA and the CIA's administrative response thereto.  The second, third and fourth parts respectively discuss how the CIA Records system is maintained, how FOIA requests are processed at CIA, and why certain information was required to be withheld.  I conclude this Declaration in part five.

## I.    PROCEDURAL HISTORY

10.  By letter dated June 5, 2002, Plaintiff submitted to the CIA a request under both the FOIA and PA seeking "any, and or, [sic] all records" pertaining to Plaintiff or DeBeers Consolidated Mines Ltd., the Worldwide Humankind Relations Council, and the Committee of American & Jewish Remembrance to the extent that these records concerned Plaintiff.  Plaintiff also requested "any, and or, [sic] all records" pertaining to Plaintiff "in relation to any contact, or correspondence" between the CIA and the Federal

Bureau of Investigation ("FBI") "regarding FBI case '01 mg 1902." A true and correct copy of Plaintiff's June 5, 2002, letter is attached hereto as Exhibit A, and is incorporated by reference herein.

11. By letter dated June 12, 2002, the CIA acknowledged receipt of Plaintiff's June 5, 2002 request, assigned it Reference No. P-2002-00396 and requested that Plaintiff provide either a notarized statement or statement signed under penalty of perjury (28 U.S.C. § 1746) attesting to his identity so that CIA could begin to process his request. A true and correct copy of CIA's June 12, 2002, letter is attached hereto as Exhibit B, and is incorporated by reference herein.

12. By letter dated June 17, 2002, Plaintiff responded to CIA's request for additional information and submitted a signed declaration pursuant to Section 1746 of Title 28, U.S. Code. A true and correct copy of Plaintiff's June 17, 2002, letter is attached hereto as Exhibit C, and is incorporated by reference herein.

13. By letter dated June 19, 2002, CIA acknowledged receipt of Plaintiff's June 17, 2002, letter and advised that it had accepted his request for processing pursuant to the FOIA and the PA. The letter further advised Plaintiff that due to the heavy volume of FOIA requests, CIA would be

unable to respond within 20 working days and, thus,
Plaintiff had the right to consider this a denial of
records and appeal to the Agency Release Panel. A true and
correct copy of CIA's June 19, 2002, letter is attached
hereto as Exhibit D, and is incorporated by reference
herein.

14. By letter dated April 16, 2004, the CIA provided
a partial response to Plaintiff's request for information.
The Agency's letter enclosed a document which was redacted
in accordance with section 552(b)(3) of the FOIA and
section 552a(j)(i) of the PA. The letter noted that the
Agency's search had located material requiring coordination
with another government agency, and that the CIA would
provide a follow-up response to Plaintiff after receiving a
response from the other government agency. A true and
correct copy of CIA's April 16, 2004, letter is attached
hereto as Exhibit E, and is incorporated by reference
herein.

15. By letter dated November 3, 2004, the CIA
completed its response to Plaintiff's information request
and enclosed two documents redacted in accordance with
sections 552(b)(1) and (b)(3) of the FOIA and sections
552a(j)(i) and (k)(1) of the PA and the instructions of the
other agency. The letter further notified Plaintiff of his

right to appeal the Agency's determinations to the Agency

Release Panel within forty-five days of the date of this

letter. A true and correct copy of CIA's November 3, 2004,

letter is attached hereto as Exhibit F, and is incorporated

by reference herein.

16. By letter dated November 9, 2004, Plaintiff

contacted the Agency Release Panel to request "any, and or

all, CIA-Document-Records [sic] pertaining to M.D.

Pinnavaia, regarding contact between the FBI and the CIA."

Plaintiff also inquired whether the three documents

received by Plaintiff from the CIA were "an origination

from the FBI". A true and correct copy of Plaintiff's

November 9, 2004, letter is attached hereto as Exhibit G,

and is incorporated by reference herein.

17. By letter dated November 10, 2004, the CIA

notified Plaintiff that the Agency Release Panel had

accepted Plaintiff's November 9, 2004, letter as an appeal.

A true and correct copy of CIA's November 10, 2004, letter

is attached hereto as Exhibit H, and is incorporated by

reference herein.

18. By letter dated May 12, 2005, the CIA notified

Plaintiff that "on the basis of FOIA exemptions (b)(1) and

(b)(3) and PA exemptions (j)(1) and (k)(1) the portions of

the three documents that were previously denied must

8

continue to be denied." Therefore, in accordance with
Agency regulations set forth in parts 1900 and 1901 of
title 32 of the Code of Federal Regulations, the Agency
Release Panel denied Plaintiff's appeal. Finally, the CIA
informed Plaintiff of his right to seek judicial review. A
true and correct copy of CIA's May 12, 2005, letter is
attached hereto as Exhibit I, and is incorporated by
reference herein.

19. On June 20, 2005, Plaintiff filed a complaint
with this court for declaratory relief.

## II. CIA RECORDS SYSTEMS

20. Any intelligence or security agency continually
faces the risk that there may be a spy within its ranks.
Prudence dictates that an agency take appropriate
counterintelligence and security precautions to minimize
the potential damage to the national security that could
result from a spy in its midst. One way to minimize such
damage is to strictly limit the amount of information to
which any particular employee has access.

21. CIA limits employee access to information by
employing the "need-to-know" policy, which provides that an
employee is granted access only to that information
required to perform the employee's duties, and no more.

Among the ways that CIA implements this policy is by decentralizing and compartmenting its records systems.

22. While the counterintelligence advantage of this practice is obvious, one disadvantage is equally obvious. The trade-off for the improved security that results from decentralization and compartmentation is the inherent inefficiencies that are created in the processes for searching for and retrieving records. These inefficiencies affect not only the day-to-day activities of CIA employees trying to perform their mission, but also the process of responding to FOIA requests, which is described below.

### III. PROCESSING OF FOIA REQUESTS

23. My office within Information Management Services (IMS) is the initial reception point for all FOIA requests. Under my supervision, experienced IMS records professionals analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request. IMS then transmits a copy of the request to each relevant component. When a request is broad, it is quite common for IMS to transmit the request to many components. Because the CIA's records systems are decentralized and compartmented, each component must then devise its own search strategy, which includes identifying

which of its records systems to search, as well as what search tools, indices, and terms to employ. The records management professionals in each component who conduct the FOIA searches are the same professionals who conduct records searches in aid of the component's mission on a daily basis.

24. All CIA components are contained within one of five directorates or office clusters: the Directorate of Intelligence (DI), the Directorate of Operations (DO), [4] the Directorate of Science and Technology (DS&T), the Directorate of Support (DS), [5] and the Director of CIA Area (DCIA Area).

25. The DI is the CIA component that analyzes, interprets, and forecasts foreign intelligence issues and world events of importance to the United States. The DI is also responsible for the production of finished intelligence reports for dissemination to policymakers in the U.S. Government. Appropriately-trained DI personnel regularly conduct FOIA and PA searches of the DI records system as part of their normal responsibilities.

---

[4] The Directorate of Operations was recently renamed the "National Clandestine Service (NCS)." For purposes of this declaration, however, I make reference to the DO instead of NCS.

[5] The Directorate of Support was previously named the "Directorate of Administration (DA)." For purposes of this declaration, however, I make reference to the DS instead of DA.

26. The DO's records system contains information on persons who are of foreign intelligence or counterintelligence interest to CIA and other U.S. Government agencies. Appropriately-trained DO personnel regularly conduct FOIA and PA searches of the DO records system as part of their normal responsibilities.

27. The DS is responsible for CIA's administrative matters. It maintains records on all current and former CIA employees, whether employed in a contract or staff capacity, as well as other individuals for whom security processing or evaluation has been required (including those who come to CIA's attention because of a counterintelligence interest). The DS's records system also contains information regarding independent contractors and covert assets. Furthermore, DS's records system includes those records located in the Security Center (SC). SC maintains a centralized computer database that contains a record of all security-related documents. The personnel security database, which can be searched by name and by social security number, includes documents that date back to CIA's inception. Appropriately-trained DS personnel regularly conduct FOIA and PA searches of the DS records system as part of their normal responsibilities.

28.  The DS&T is the CIA component responsible for creating and applying technology to fulfill intelligence requirements.  In addition, the DS&T includes the Foreign Broadcast Information Service (FBIS).[6]  FBIS is the primary collector of foreign open-source information for the U.S. intelligence community.  Appropriately-trained DS&T personnel regularly conduct FOIA and PA searches of the DS&T records system as part of their normal responsibilities.

29.  The DCIA Area is a cluster of offices directly responsible to the Director of CIA, and is distinct from the Agency's four main directorates (DI, DO, DS and DS&T). The DCIA Area includes such components as the Office of Inspector General (OIG), Office of General Counsel (OGC), Office of Congressional Affairs (OCA), Office of Public Affairs (OPA) and Office of Protocol (OP).  Appropriately-trained DCIA Area personnel regularly conduct FOIA and PA searches of the DCIA Area records systems as part of their normal responsibilities.

30.  After a tasked component (within one of the directorates described above) locates documents, officers must review the documents to determine whether they are in fact responsive to the request.  Frequently, due to the

_____

[6] Although FBIS is no longer part of DS&T, it was part of DS&T at all times relevant to this FOIA action

nature of a particular records system, or the search tools, indices, or terms employed, a search may locate many documents that are not responsive to the request. In fact, it is quite common for the number of non-responsive documents located through a search to be many times the number of responsive documents.

31. After officers remove non-responsive documents, the component must then review each remaining document to determine which FOIA exemptions apply and whether non-exempt information reasonably can be segregated from exempt information. Because many CIA documents contain classified information, the component officers must segregate exempt information from non-exempt information on a line-by-line and word-by-word basis to avoid inadvertently disclosing classified information. This is a laborious and time-consuming process.

32. In the course of reviewing documents for exempt information and segregability, a component frequently identifies information that must be coordinated with or referred to another CIA component or another agency because that component or agency originated the information or otherwise has an equity in it.[7] This coordination and referral process itself can be quite time-consuming because

---

[7] See Exec. Order No. 12,958, § 3.6(b).

14

other components and agencies have their own mission and FOIA priorities.

33. When all of the components and agencies complete their respective reviews, professionals in my office incorporate all of their recommendations regarding exemption, segregation, redaction, and release. They then conduct a review from a corporate (*vice* component) perspective on behalf of the entire CIA. In this review, they resolve conflicting recommendations, ensure that the release or withholding determinations comply with law, produce the integrated final record copy of each document, and respond to the requestor.

34. CIA produced records that were a product of a reasonable, diligent and thorough search. In this case, based on the nature of Plaintiff's FOIA request, CIA determined that two offices might reasonably possess responsive records: the DO and the DS. There, the CIA employees who performed the necessary FOIA searches: (i) have access to all pertinent intelligence, operational and administrative records; (ii) are qualified to search those records; and (iii) regularly search those records in the course of their official duties.

## IV. APPLICABLE FOIA AND PA EXEMPTIONS

35. After careful review, I have determined that the Agency properly withheld the redacted portions of the Requested Documents in accordance with applicable exemptions under the FOIA and PA.

36. The redacted portions of the Requested Documents are exempt from disclosure under the FOIA pursuant to sections 552(b)(1), which exempts classified information, and 552(b)(3), which exempts information from the FOIA that is protected under another statute. Section 552(b)(3) applies because section 103(c) of the National Security Act of 1947, as amended, requires that the Director protect intelligence sources and methods, and because Section 6 of the Central Intelligence Agency Act of 1949 provides that the CIA shall be exempt from the provisions of any other laws requiring the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

37. The redacted portions of the Requested Documents are also exempt from disclosure under the PA pursuant to sections 552a(j)(1), which recognizes exemptions of CIA records under regulations promulgated by the Director of the CIA, and 552a(k)(1), which permits an agency to exempt classified information.

## A.    FOIA Exemption (b)(1)

38.    FOIA exemption (b)(1), 5 U.S.C. § 552(b)(1),
provides that agencies are exempt from disclosing material
that is:

> (A) specifically authorized under criteria
> established by an Executive Order to be kept
> secret in the interest of national defense or
> foreign policy, and (B) is in fact properly
> classified pursuant to such Executive Order.

39.    Executive Order 12,958 addresses classification
of information relating to intelligence and national
security.  Section 1.4 provides that information to be
classified includes, inter alia, information concerning
"intelligence activities . . . intelligence sources or
methods, or cryptology" and "(d) foreign relations or
foreign activities of the United States [.]"

40.    Section 1.2 of Executive Order 12,958 establishes
three levels of classification for national security
information.  Information may be classified as CONFIDENTIAL
when the unauthorized disclosure of that information
reasonably could be expected to cause damage to national
security.  If unauthorized disclosure reasonably could be
expected to cause serious damage to national security, then
the information may be classified as SECRET.  Finally, if
unauthorized disclosure reasonably could be expected to

cause exceptionally grave damage to national security, the
information may be classified as TOP SECRET.

41.  Section 6.1(h) of Executive Order 12,958 defines
classified national security information as "information
that has been determined pursuant to this order or any
predecessor order to require protection against
unauthorized disclosure and is marked to indicate its
classified status when in documentary form."  Section
3.1(b) of Executive Order 12,958 states, "[i]t is presumed
that information that continues to meet the classification
requirements under this order requires continued
protection."

42.  Under the Agency's FOIA and Privacy Act programs,
information responsive to FOIA and PA requests that has
been classified under Executive Order 12,958 or its
predecessors is reviewed to determine whether such
information is currently and properly classified.

43.  I have determined that the classified information
withheld from Plaintiff continues to meet the standards for
classification under Executive Order 12,958.  The
information withheld on the basis of FOIA Exemption (b)(1)
falls within the category of information concerning
"intelligence activities . . . intelligence sources or
methods or cryptology" in Section 1.4(c) of Executive Order

12,958. Disclosure of this information reasonably could be expected to cause damage or serious damage to national security. The information withheld is therefore properly classified as CONFIDENTIAL or SECRET.

44. Details of the activities of the CIA must be protected from disclosure because such information would materially assist those who seek to detect, penetrate, obstruct or damage the intelligence operations of the United States. Disclosure of information that would offer insight into activities, targets, or subjects of interest to the CIA would permit the subjects of intelligence collection efforts to implement countermeasures and alter their activities to evade detection. The resulting disruption of the CIA's ability to collect information would materially damage the intelligence operations and the national security of the United States.

45. The CIA's foreign intelligence operations and intelligence interest in a specific foreign national or area represent an intelligence activity, the unauthorized disclosure of which could be expected to cause serious harm to the national security. For example, the disclosure of such information could result in alerting a potential U.S. intelligence target of the areas and persons of CIA interest and how CIA is allocating its resources. Such

information would permit the target to array its
counterintelligence resources most efficiently to frustrate
CIA collection efforts.

46. Additionally, details of intelligence methods
(whether of intelligence collection, conduct of clandestine
activities, or intelligence analysis) must be protected
because unauthorized disclosure of a particular method
results in the loss of that method.  Intelligence methods
are the means by which an intelligence agency accomplishes
its mission.  Intelligence methods must be protected in
situations in which activities, capabilities or techniques
are unknown to U.S. adversaries or other individuals or
entities that would take countermeasures against U.S.
intelligence operations.

47. In exercising this authority, the DCI protects
not only mere references to intelligence methods but also
the information produced by those intelligence methods.
Foreign intelligence services view discovery of CIA
methodology as one of their primary defensive missions.  To
this end, foreign intelligence services scour open sources
for officially released intelligence information.  These
foreign intelligence services are capable of gathering
information from myriad sources, analyzing this information
and deducing means to defeat CIA collection efforts from

disparate and seemingly unimportant details. What may seem
trivial to the uninformed may, in fact, be of great
significance, and may put a questioned item of information
in the proper context. As such it is the fact of the use
of a particular intelligence method in a particular
situation, in addition to the method itself, which the DCI
must protect.

48. A particular intelligence method is effective
only so long as it remains unknown and unsuspected to its
target. Once the nature of an intelligence method or its
use is discovered, its continued successful use will be in
serious jeopardy. Indeed, disclosure of intelligence
methods and practices would be of material assistance to
those who would seek to penetrate, detect, prevent, or
damage U.S. intelligence operations. Thus, disclosure of a
particular intelligence method leads to the neutralization
of that method -- whether the method is used for
information collection, the conduct of clandestine
activities, or information analysis and evaluation.

49. As such, the DCI must protect the full spectrum
of intelligence methods from disclosure because such
information would be of material assistance to those who
would seek to penetrate, detect, prevent or damage the
intelligence operations of the United States. Knowledge of

or insights into specific intelligence collection methods would be of invaluable assistance to those who wish to detect, penetrate, counter or evaluate the activities of the CIA.

50. Accordingly, CIA may withhold information concerning particular intelligence methods if CIA determines that such information could reasonably be expected to assist foreign intelligence services to the detriment of the United States. Without such protection, CIA would quickly become impotent.

51. One intelligence method used by the CIA is to operate covert installations within the United States and abroad. Official acknowledgment that the CIA maintains an installation in a particular location within the United States would likely result in terrorists and foreign intelligence services targeting the installation.

52. Similarly, official acknowledgment that the CIA maintains an installation in a particular location abroad would likely cause the government of the country in which the installation is located to take countermeasures, either on its own initiative or in response to public pressure in order to eliminate the CIA presence within its borders, or otherwise to retaliate against the United States, its employees or agents. Revelation of this information also

would likely result in terrorists and foreign intelligence services targeting that installation.

53. Additionally, in some cases, the disclosure of information concerning a covert CIA installation would, in and of itself, reveal another specific intelligence method for which the CIA uses the installation.

54. The use of cryptonyms and pseudonyms is an intelligence method whereby words and letter codes are substituted for actual names or identities in order to protect intelligence sources and other intelligence methods. Specifically, the CIA uses cryptonyms are used in cables and other correspondence to disguise the true name of a person or entity of operational intelligence interest, such as a source, foreign liaison service, or a covert project. The CIA uses pseudonyms, which are essentially code names, solely for internal CIA communications.

55. When obtained and matched to other information, cryptonyms and pseudonyms possess a great deal of meaning for someone able to fit them into the proper framework. For example, the reader of a message is better able to assess the value of its contents if the reader knows the identity of the particular individual or project by the cryptonym or pseudonym. Also, a reader may be able to identify a specific CIA source or undercover employee. By

using these code words the CIA adds an extra measure of
security, minimizing the damage that would flow from an
unauthorized disclosure of intelligence information.

56.   In fact, the mere use of a cryptonym or pseudonym
in place of plain text to describe a project or person is
an important piece of information in a document.  Use of
such code words may signal to a reader the importance of
the project or person signified by the codeword.  By
disguising individuals or projects, cryptonyms and
pseudonyms reduce the seriousness of a breach of security
if a document is lost or stolen.

57.   Although release or disclosure of isolated code
words would not in and of itself necessarily create serious
damage to the national security, its disclosure in the
aggregate or in a particular context would permit foreign
intelligence services to fit disparate pieces of
information together and to discern or deduce the identity
or nature of the person or project for which the cryptonym
or pseudonym stands.

58.   In summary, the withheld classified information
contained in the Requested Documents concerns intelligence
information listed in Section 1.4 of Executive Order
12,958.  This information remains properly classified
because its release could cause damage or serious damage to

the national security of the United States.  As properly

classified information, it is exempt from disclosure

pursuant to section 552(b)(1) of the FOIA.


**B.    FOIA Exemption (b)(3)**

59.  Much of the withheld information is exempt from

disclosure under FOIA exemption (b)(3), 5 U.S.C. §

552(b)(3), because it concerns intelligence methods or CIA

organizational and internal information.  FOIA exemption

(b)(3) provides that the FOIA does not apply to matters

that are:

> specifically exempted from disclosure by statute
> (other than section 552(b) of this title),
> provided that such statute (A) requires that the
> matters to be withheld from the public in such a
> manner as to leave no discretion on the issue, or
> (B) establishes particular criteria for
> withholding or refers to particular types of
> matters to be withheld.

60.  FOIA exemption (b)(3) protects any information

contained in the Requested Documents that is also protected

from disclosure under another statute.  The information

withheld from the Requested Documents is protected from

disclosure under two additional statutes, and therefore is

exempt from disclosure under the FOIA pursuant to exemption

(b)(3).

61.  First, some of the redacted information in the documents released to Plaintiff falls within the scope of Section 103(c)(7) of the National Security Act of 1947, codified at 50 U.S.C. § 403-3(c)(7), as amended, which requires the protection of intelligence sources and methods from unauthorized disclosure.  Section 103(c)(7) applies without regard to any determination that disclosure of the specific information would cause damage to the national security.[8]

62.  In addition, Section 6 of the Central Intelligence Agency Act of 1949, codified at 50 U.S.C. § 403g, as amended, provides that the CIA shall be exempt from the provision of any other law requiring the publication or disclosure of the organization, function, names, official titles, salaries, or numbers of personnel employed by the CIA.  On the basis of this statute –– and thus under FOIA exemption (b)(3) –– CIA organizational information including file numbers, installation locations and identifiers of internal components, as well as document

---

[8] This is one way in which FOIA exemption (b)(3) differs from exemption (b)(1), since national security classification rests on an assessment of the damage to the national security that unauthorized disclosure of Confidential, Secret, or Top Secret information might cause.  See Executive Order 12,958 § 1.2(a), as amended. Any information that is properly classified on the basis that it relates to intelligence sources and methods is, to at least the same extent, also subject to the Director's statutory obligation to protect such sources and methods.

markings indicating the levels of classification of
different portions of documents and procedures for and
indicators restricting dissemination of information
contained in the document, are absolutely protected from
disclosure by law and, therefore, were redacted from the
Requested Documents.  Likewise, the Agency has redacted the
names and functions of certain CIA employees under the
authority of this statute.

63.  Additionally, as stated in paragraphs 46 to 58
above, the information withheld from the Requested
Documents concerns intelligence methods.  Because such
information is exempt from disclosure pursuant to Section 6
of the CIA Act of 1949, this information was properly
withheld pursuant to FOIA exemption (b)(3).

C.  **Privacy Act Exemption (j)(1)**

64.  Privacy Act exemption (j)(1), codified at 5
U.S.C. § 552a(j)(1), permits the Director of the CIA to
promulgate regulations exempting CIA records from
disclosure under the PA.  The Director has promulgated
regulations, codified at 32 C.F.R. § 1901.62(3), which
exempt information which would "consist of, pertain to, or
otherwise reveal intelligence sources and methods" from
disclosure under the PA.

65. As noted above, the information withheld from the Requested Documents relates to intelligence activities, sources and methods, and also contains sensitive cryptologic information. As such, this information would "consist of, pertain to, or otherwise reveal intelligence sources and methods," and is therefore protected from disclosure by 32 C.F.R. § 1901.62(3). Because this information has been exempted from disclosure by regulations promulgated by the Director, the information is also exempt from disclosure pursuant to 5 U.S.C. § 552a(j)(i).

### D.   Privacy Act Exemption (k)(1)

66. Privacy Act exemption (k)(1), codified at 5 U.S.C. § 552a(k)(i), states that the head of any agency may promulgate rules to exempt any system of records within the agency from disclosure if the system of records is subject to the provisions of 5 U.S.C. § 552(b)(1). In other words, an agency may exempt classified information from disclosure under the Privacy Act.

67. As discussed above, the information withheld from the Requested Documents falls within the scope of 5 U.S.C. § 552(b)(1). Additionally, the Director of the CIA has promulgated 32 C.F.R. § 1901.63(a), which provides that information classified pursuant to Executive Order

28

12,958 is exempt from disclosure under the PA.

Consequently, the information withheld from the Requested

Documents is exempt under section (k)(1).

## V.    CONCLUSION

68.    For the reasons set forth above, I have

determined that the redacted portions of the Requested

Documents must be protected from release because their

disclosure could reasonably be expected to cause harm to

the national security and to reveal intelligence

activities, sources, and methods.

69.    I declare under penalty of perjury under the laws

of the United States of America that the foregoing is true

and correct.

Executed this 6th day of January 2006.

Scott A. Koch, PhD
Chief, Public Information Programs Division
Central Information Office
Central Intelligence Agency

FROM :                    FAX NO. : 760 966 1335          Jun. 05 2002 10:47AM  P1

P-2002-00396

Matthew D. Pinnavaia
1701 Bush Street 6-P
Oceanside CA  92054 7137
(Tel. & Telefax. ) 760 966 1335)

June 5, 2002. Wed.                                          **Exhibit A**

Central Intelligence Agency
FOIA/PA Division
Washington  DC
(Fax. 703 613 3007)

Re: Privacy Act Request for Records.

A two-part request.

Part I - This is a request under the Privacy Act of 1974. I
request a copy of any, and or, all records pertaining to myself,
Matthew David Pinnavaia, an American citizen. I also request
a copy of any, and or, all records pertaining to the following
corporations, and or, subsidiaries, which would be associated
specifically with my name - DeBeers Consolidated Mines Ltd.,
Yorklyn, DE, USA; The Worldwide Humankind Relations Council,
Oceanside, CA, USA; and, The Committee of American & Jewish
Remembrance, Yorklyn, DE, USA, and of Oceanside, CA, USA.

Part II - This is a request under the Privacy Act of 1974. I
request a copy of any, and or, all records pertaining to myself,
Matthew David Pinnavaia, in relation to any contact, or
correspondence, between the Central Intelligence Agency (CIA)
and the Federal Bureau of Investigation (FBI), regarding FBI
case '01 mg 1902.

Please consider that this request is also made under the
Freedom Of Information Act (FOIA). Please provide any additional
information that may be available under the FOIA.

Enclosed (second page of fax) is an identifying document
that will verify my identity - CA. Driver License. Date of
Birth. 5-20-58; Place of Birth, Huntington, NY, USA.

Please estimate the fees for this request and state the
approximate total sum for this FOIA/PA-Request.

Thank you,

Matthew D. Pinnavaia

Matthew D. Pinnavaia

(page one of two)

**Exhibit A**



Central Intelligence Agency



Washington, D.C. 20505

**Exhibit B**

12 June 2002

Mr. Matthew D. Pinnavaia
1701 Bush Street 6-P
Oceanside, CA 92054-7137

Reference: P-2002-00396

Dear Mr. Pinnavaia:

This acknowledges receipt of your 5 June 2002 facsimile for information pertaining to yourself. For identification purposes we have assigned your request the number referenced above.

As you may know, the discovery of anthrax in a letter mailed to the United States Senate on October 15 led to a series of escalating safety concerns about opening, handling, and even being in the proximity of mail, especially in government offices in Washington, D.C. These concerns, in turn, led to disruptions in, and then total curtailments of, mail delivery service, to include Freedom of Information Act-related correspondence, at many federal agencies, including the Central Intelligence Agency.

Under such extraordinary circumstances, the administration of the Freedom of Information Act has inevitably been delayed at all affected federal agencies. As a matter of both common sense and legal precedent, when mail delivery is delayed, so is the commencement of the process of FOIA administration, regardless of the time at which a FOIA request is placed into the mail by the requester or postmarked thereafter. Simply put, the FOIA process cannot begin until the personnel of an agency FOIA office are able to open any belatedly delivered item of mail.

**Exhibit B**

The Privacy Act requires federal agencies to ensure that improper disclosure of personally identifiable information about an individual will not occur. Therefore, CIA Privacy Regulations, Title 32 C.F.R. § 1901.13, set forth the following requirements:

> An individual seeking access to or amendment of records about himself shall provide in the letter of request his full (legal) name, address, date and place of birth, and current citizenship status together with a statement that such information is true under penalty of perjury or a notarized statement swearing to or affirming his identity. In the case of an individual who is an alien lawfully admitted for permanent residence, said individual shall provide his or her alien registration number and the date that status was acquired.

Although you have provided most of the necessary biographic information, we must receive either **a notarized statement or statement signed under penalty of perjury (28 U.S.C. § 1746)** attesting to your identity before we can begin processing your request. Although not required, we would appreciate any other information you would care to provide that would make our search more accurate.

Meanwhile, we will hold your request in abeyance for 45 days from the date of this letter pending your reply. Please cite the reference number above on future correspondence. If you would prefer to fax in your statement of identity, our fax number is 703-613-3007.

Sincerely,

*Chris K.*

for Kathryn I. Dyer
Information and Privacy Coordinator

Matthew D. Pinnavaia
1701 Bush Street 6-P
Oceanside  CA  92054 7137
(Tel. & Telefax. ) 760 966 1335)

**Exhibit C**

2002 JUN 18 AM 5: 05

June 17, 2002. Mon.

Central Intelligence Agency
Washington  DC
(Fax. 703 613 3007}

Ms. Kathryn I. Dyer
Information and Privacy Coordinator

Dear Ms. Dyer:

I have received your letter of June 12, 2002, whereby you are requesting additional biographic information pertaining to my FOIA/PA-Request by facsimile of June 5, 2002 - Reference #P-2002-00396. I do now provide:

A DECLARATION PURSUANT TO TITLE 28, U.S.C., SECTION 1746.

I swear or affirm under penalty of perjury that I am, Matthew D. Pinnavaia; Date of Birth, 05-20-58; Place of Birth, Huntington, NY; Current address, 1701 Bush Street Apt 6-P Oceanside  CA  92054 7137 USA. I am an American citizen and have been, since my birth in this country.

This declaration is submitted in lieu of my notarized signature pursuant to Title 28, U.S.C., Section 1746.

I certify that I am the person named above and I understand that any falsification of this statement is punishable under the provisions of Title 18, U.S.C., Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years, or both; and that knowingly and willfully requesting or obtaining any record(s) concerning an individual under false pretenses is punishable under the provisions of Title 5, U.S.C. Section 552a(i)(3) as a misdemeanor and by a fine of not more than $5,000.

Signature:  *Matthew D. Pinnavaia*

Date:  6-17-02

Central Intelligence Agency



Washington, D.C. 20505

**Exhibit D**

19 June 2002

Mr. Matthew D. Pinnavaia
1701 Bush Street 6-P
Oceanside, CA 92054-7137

Reference: P-2002-00396

Dear Mr. Pinnavaia:

This acknowledges receipt of your facsimile dated 17 June 2002 wherein you provided additional information pursuant to your request for information pertaining to yourself.

We have accepted your request; it will be processed in accordance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, and the Privacy Act of 1974, 5 U.S.C. § 552a. Our search will be for documents in existence as of and through the date of this acceptance letter. No fees will be charged.

The heavy volume of FOIA requests received by the Agency has created delays in processing. Since we cannot respond within the 20 working days stipulated by the FOIA, you have the right to consider this a denial and may appeal to the Agency Release Panel. It would seem more reasonable, however, to have us continue processing your request and respond to you as soon as we can. You can appeal any denial of records at that time. Unless we hear from you otherwise, we will assume that you agree, and we will proceed on this basis.

Sincerely,

*Chris K.*

for Kathryn I. Dyer
Information and Privacy Coordinator

Central Intelligence Agency



Washington, D.C. 20505

**Exhibit E**

16 April 2004

Mr. Matthew D. Pinnavaia
1701 Bush Street 6-P
Oceanside, CA 92054-7137

Reference: P-2002-00396

Dear Mr. Pinnavaia:

This is a partial response to your 5 June 2002 request for information about yourself. Your request is being processed in accordance with the Privacy Act (PA) and the Freedom of Information Act (FOIA). Our processing included a search for records in existence as of and through the date of our acceptance letter dated 19 June 2002.

After a thorough search of the appropriate records systems, we were able to locate responsive documents. The enclosed document is being released in segregable form with deletions made on the basis of PA exemption (j)(1) and FOIA exemption (b)(3). For your information, FBIS has the unclassified mission of receiving and transcribing various foreign media broadcasts and publications. Please note that this document contains information that is or may be copyrighted in a number of countries. Copying or further dissemination without the permission of the copyright owner(s) is prohibited. An explanation of the exemptions is also enclosed.

Since there is material that requires coordination with another government agency, we cannot finalize your request. Once this material is returned to us, we will forward it to you as a follow-up to this response. At that time, we will finalize your request and provide you with the appeal rights to which you are entitled.

Sincerely,

*Chris K.*

Alan W. Tate
Acting Information and Privacy Coordinator

Enclosures

MORI DocID: 1053538

**Exhibit E**

DOCUMENT_ID: 189029772
DOCNO:    IAP20011004000030
PRODUCER: RESTON VA
SOURCE:   FBIS
DOCTYPE:  FIELD
DOCPREC:  P
ORIGDATE: 200110041102
DOR:      20011004
TOR:      070207
MHFNO:    01 6926799
DOCCLASS: U

CDS
   /  /                      UNCLASSIFIED              FRP: . . . . . . .

ACTION: NONE        ┐ 'INFO┌
                    │ 2/W) │
                    │      │
01 6926799   MUP         PAGE 001              NC 6926799
                  TOR: 041102Z OCT 01         FBIS RES 041102Z

------------------------------------------------------------------------

HEADER
PP RUEAIIS
DE RUCWAAA #1554 2771102
ZNR UUUAX
P 041102Z OCT 01
FM FBIS RESTON VA
TO RAYWAP/ATTORNEY GENERAL D BRANCH CANBERRA ACT AS
RAYWBBR/DIO CANBERRA AS
RAYWBFA/ONA CANBERRA ACT AS
RHDIAAA/ACCIS LANGLEY AFB VA//361S//
RHDLCNE/CINCUSNAVEUR LONDON UK//N2//
RHEBAAA/DEPT OF ENERGY WASHINGTON DC//IN-1//
RHEFJWC/JWAC DAHLGREN VA
RHEFNGA/CDRNGIC CHARLOTTESVILLE VA
RHEFPQAN/MARCORINTACT QUANTICO VA
RHFJUSC/US CUSTOMS SERVICE WASHINGTON DC
RHFJUSE/USCS FIU SE MIAMI FL
RHFJUSH/USCS TIC BAY ST LOUIS MS
RHFJUSI/USCS AIU LONG BEACH CA
RHFPAAA/UTAIS RAMSTEIN AB GE//INOW//
RHHJDHA/PACAF IDHS PEARL HARBOR HI
RHHJJAA/JICPAC HONOLULU HI
RHHJJPI/PACOM IDHS HONOLULU HI
RHHJRAP/USARPAC INTEL FT SHAFTER HI//APIN//
RHHMUNA/USCINCPAC HONOLULU HI
RHRMBAB/COMUSNAVCENT//N2//
RUAGJDU/SACINCUNC SEOUL KOR

RELEASE IN PART
EXEMPTIONS: (b)(3)
      ()(1)
DATE: MAR 2004

MORI DocID: 1053538

**Exhibit E**

```
RUCJNAV/DEPCOMUSNAVCENT MACDILL AFB FL//N51D//
RUCPDOC/DEPT OF COMMERCE WASHINGTON DC
RUCXGRD/COGARD INTELCOORDCEN WASHINGTON DC
RUCXNIS/DIRNAVCRIMINVSERV WASHINGTON DC
RUCXONI/ONI WASHINGTON DC//2140//
RUDKAL/ALMATYBETA
RUDKKB/BAKUBETA
RUDKKC/TASHKENTBETA
RUDKKR/TUNISBETA
RUEAFDC/CDRICORPS FT LEWIS WA//AFZH-GS//
RUBAIIS/STORAGE CENTER FBIS RESTON VA
RUEHC/SECSTATE WASHINGTON DC//INR//
RUEHC/SECSTATE WASHINGTON DC//INRPD//
RUEHC/SECSTATE WASHINGTON DC//NEA/IAI//
RUEHC/SECSTATE WASHINGTON DC//NEA/NGA//
RUEHC/SECSTATE WASHINGTON DC//PASS TO AID FOR DAVID DALTON//
RUEHC/SECSTATE WASHINGTON DC//PASS TO USAID FOR ANE/SEA//
RUEHC/SECSTATE WASHINGTON DC//SA/PAB//
RUEHDM/AMEMBASSY DAMASCUS
RUEHEG/AMEMBASSY CAIRO
RUEHJM/AMCONSUL JERUSALEM
RUEHKL/AMEMBASSY KUALA LUMPUR
RUEHKU/AMEMBASSY KUWAIT
RUEHMK/AMEMBASSY MANAMA
RUEHNE/AMEMBASSY NEW DELHI
RUEHTU/AMEMBASSY TUNIS
RUEHTV/AMEMBASSY TEL AVIV
RUEKDIA/DIA WASHINGTON DC
RUEKJCS/JOINT STAFF WASHINGTON DC//J5//
RUEKJCS/SECDEF WASHINGTON DC
RUEOADA/609AIS SHAW AFB SC
RUEOBBA/USCENTAF SHAW AFB SC//A2//
RUEPINA/DIRLIWA FT BELVOIR VA
RUEPKAA/COLMGTOFC82DABNDIV FT BRAGG NC
RUEPMAX/GISA FT BRAGG NC
RUEPPOG/CDR PSYOPGP FT BRAGG NC//ASOF-POG-SB//
RUEPPOG/CDR4THPSYOPGP FT BRAGG NC//AOCP-POG-SB//
RUEPTAC/ISDTACOM WARREN MI
RUEPTUT/COLMGTOFCXVIIIABNC FT BRAGG NC
RUEPVAA/COMJSOC FT BRAGG NC//J-2//
RUEPVAI/CDRUSASOIC WASHINGTON DC//DIS//
RUEPWDC/DA AMHS WASHINGTON DC
RUERZCA/CDR 500TH MIBDE CP ZAMA JA//IAGPD-OS//
RUETIAA/NSACSS FT GEORGE G MEADE MD
RUFGAID/USCINCEUR INTEL VAIHINGEN GE
RUFOADA/JAC MOLESWORTH RAF MOLESWORTH UK
RUFRQJQ/COMSIXTHFLT
RUFTAKC/UDITDUSAREUR HEIDELBERG GE
RUHBABA/CG III MEF//G-2//
RUHBANB/TWELFTH MAR//S-2//
RUHBBEA/CG THIRD FSSG CAMP KINSER JA//G2//
RUHEMBN/NAVCRIMINVSERVRA PEARL HARBOR HI
RUHHAEA/NAIC WRIGHT PATTERSON AFB OH
RUHUDMC/612AIS DAVIS MONTHAN AFB AZ//INTA//
```

MORI DocID: 1053538

RULSDMK/DEPT OF TRANSPORTATION WASHINGTON DC//S-60//
RUMIAAA/USCINCSO MIAMI FL//SCJ3-PSY//
RUMIAAA/USCINCSO MIAMI FL//SCPA/SCJ2-IW//
RUMIAMC/COMMARFORSOUTH MIAMI FL//G-2//
RUMICEA/USCINCCENT INTEL CEN MACDILL AFB FL .
RUMIJTA/DI RJIAPF EAST JNTFUSIONCTR
RUMIJTF/DI RJIATF EAST
RUQMDM/DAMASCUSBETA
RUQVKEW/AFIWC KELLY AFB TX//OSKC//
RUQYSDM/NAVSECGRUACT ROTA SP
RUWHTEW/US CUSTOMS SERVICE CORPUS CHRISTI TX
RUWSMXI/AMC INTEL CEN SCOTT AFB IL//INO//
RUWSMXI/USCINCTRANS INTEL CEN SCOTT AFB IL//J2-0/J2-J//
RUYLBAH/DODSPECREP OKINAWA JA
RXPPSH/SHAPE BE//UAJ//
ACCT FBWA-EWDK
BT

**Exhibit E**

CONTROLS
UNCLAS

WARNING: TOPIC: TERRORISM, INTERNATIONAL POLITICAL

SERIAL:  IAP20011004000030

TEXT
COUNTRY:  IRAN, UNITED STATES, AFGHANISTAN, ISRAEL, WEST BANK & GAZA
          STRIP

SUBJ:    TEHRAN TIMES: RECENT EVENTS DIRECT RESULT OF PAST, PRESENT
          US FOREIGN POLICY

SOURCE:  TEHRAN TEHRAN TIMES (INTERNET VERSION-WWW) IN ENGLISH 0001
          GMT 4 OCT 01

TEXT:

    (FBIS TRANSCRIBED TEXT) (`PERSPECTIVES': "US FOREIGN POLICY IS
RESPONSIBLE" BY: MATTHEW D. PINNAVAIA, US)

    THE RECENT CATASTROPHE OF THE DESTRUCTION OF THE WORLD TRADE
CENTER IN NEW YORK CITY, IS THE DIRECT RESULT OF A PAST AND PRESENT
US FOREIGN POLICY, WHICH IS IN VIOLATION OF THE LOGICAL AND MORAL
FOUNDATIONS OF THE FIRST US FOREIGN POLICY AS COMPOSED BY GEORGE
WASHINGTON AND OUR FOUNDING FATHERS.
    PRESIDENT WASHINGTON, AS STATED IN HIS FAREWELL ADDRESS OF 1796,
TO THE AMERICAN CITIZENRY CONCERNING THE SUBJECT OF FOREIGN NATIONS
AND AMERICAN FOREIGN POLICY: "THE GREAT RULE OF CONDUCT FOR US, IN
REGARD TO FOREIGN NATIONS IS IN EXTENDING OUR COMMERCIAL RELATIONS
TO HAVE WITH AS LITTLE POLITICAL CONNECTION AS POSSIBLE. EUROPE HAS
A SET OF PRIMARY INTERESTS, WHICH TO US HAVE NONE, OR A VERY REMOTE
RELATION. HENCE SHE MUST BE ENGAGED IN FREQUENT CONTROVERSIES, THE
CAUSES OF WHICH ARE ESSENTIALLY FOREIGN TO OUR CONCERNS. HENCE

MORI DocID: 1053538

THEREFORE IT MUST BE UNWISE FOR US TO IMPLICATE OURSELVES, BY ARTIFICIAL TIES, IN THE ORDINARY VICISSITUDES OF HER POLITICS, OR THE ORDINARY COMBINATIONS AND COLLISIONS OF HER FRIENDSHIP, OR ENMITIES."

**Exhibit E**

THE INVOLVEMENT OF THE US IN THE REGION OF THE MIDDLE EAST, IS THE CAUSE OF HATRED, AND HAS INTENSIFIED NOT ONLY THE HATRED OF THE US AND ISRAEL BY THE ARAB-CITIZENS OF PALESTINE AND THE CITIZENS OF THE ISLAMIC WORLD; BUT ALSO HAS MADE THE US THE MAIN TARGET FOR VIOLENT EPISODES BY SPECIFIC ELEMENTS OF THE ISLAMIC WORLD.

THE TRUE FOE OF THE AMERICAN CITIZENRY IS THE PRESENT US FOREIGN POLICY, AS MANUFACTURED AND PRODUCED, BY THE POLITICAL ESTABLISHMENT OF WASHINGTON. THIS ARTIFICIAL AND IMMORAL POLICY INVOLVING THE NATIONS THAT COMPRISE THE ISLAMIC WORLD, ESPECIALLY THE ARAB-CITIZENS OF PALESTINE, IS THE CAUSE OF THE DEATH AND DESTRUCTION OF THE INNOCENT CHILDREN, WOMEN, AND MEN OF THE US, PALESTINE AND THE ISLAMIC WORLD, AND ISRAEL. THE POLITICAL ESTABLISHMENT IN WASHINGTON, ESPECIALLY THE REPRESENTATIVES AND SENATORS, IN CONJUNCTION WITH THE WIDE SPECTRUM OF THE US MEDIA, ARE RESPONSIBLE FOR WITHHOLDING THE TRUTH FROM THE AMERICAN CITIZENRY AS TO WHY THIS TRAGIC EVENT HAS OCCURRED, AND THEY ARE NOW, ALSO RESPONSIBLE FOR THE CLIMATE OF INCITEMENT THAT SURROUNDS THE US, WHICH COULD LEAD THE AMERICAN CITIZENRY INTO A NEVER-ENDING CYCLE OF WAR, WHEREIN MORE INNOCENT CITIZENS OF THE WORLD WOULD PERISH.

PRESIDENT BUSH, ALONG WITH SENIOR MEMBERS OF THE US CONGRESS, ARE CURRENTLY ASKING THE AMERICAN CITIZENRY FOR MORE OF THEIR MONEY SO AS TO INCREASE THE FUNDING OF THE US MILITARY, THE CIA AND RELATED DEFENCE-INTELLIGENCE AGENCIES, WHEREBY THEY HAVE STRESSED TO THE AMERICAN CITIZENS THAT THIS INCREASED FUNDING, IN CONJUNCTION WITH A STRATEGY OF COMPLETE WARFARE UPON CERTAIN NATIONS OF THE ISLAMIC WORLD; SHALL PREVENT ANOTHER WORLD TRADE CENTER ATTACK, AND ALL POSSIBLE FUTURE ATTACKS UPON THE US

THIS US STRATEGY IS NOT ONLY ILLOGICAL, AND PRESENTS A FALSE PATRIOTISM TO THE AMERICAN CITIZENRY, BUT SHALL ALSO COMMENCE A US STRATEGY THAT WILL BE ACKNOWLEDGED BY THE NATIONS THAT COMPRISE THE ISLAMIC WORLD, AS AN ATTACK UPON THE ISLAMIC FAITH.

THE ANSWER, AND ONLY HOPE FOR THE CITIZENS OF THE UNITED STATES, AND FOR THE CITIZENS OF THE WORLD, IS FOR THE US GOVERNMENT TO DISENGAGE FROM THE GEOPOLITICS FOR A NEW US FOREIGN POLICY, WHEREBY THERE SHALL NOT BE ANY ECONOMIC, POLITICAL, OR MILITARY INTERFERENCE UPON ANY AND ALL NATIONS OF THE WORLD, WHEREBY WE SHALL TRADE WITH ALL THE NATIONS BUT SHALL HAVE ALLIANCES WITH NONE, AND THUS WE SHALL NOT FAVOUR ONE NATION OVER ANOTHER NATION SO AS TO CREATE AN IMBALANCE IN OUR RELATIONS WITH ALL NATIONS WHICH CAN ONLY LEAD TO THE HATRED OF THE US: THE ADOPTION OF THIS NEW US FOREIGN POLICY SHALL NOT ONLY LET OUR FOUNDING FATHERS SLEEP IN ETERNAL HEAVENLINESS, BUT SHALL PROTECT THE LIFE OF BOTH THE US AND WORLD CITIZENRY, AND WILL ENDEAR THE AMERICAN CITIZENS TO ALL THE NATIONS OF THE WORLD.

(END)

(DESCRIPTION OF SOURCE: TEHRAN TEHRAN TIMES (INTERNET VERSION-WWW) IN ENGLISH -- CONSERVATIVE ENGLISH-LANGUAGE TEHRAN DAILY PUBLISHED

MORI DocID: 1053538

BY THE ISLAMIC PROPAGATION ORGANIZATION.    OCCASIONALLY CRITICAL OF
SOME CONSERVATIVE EXCESSES).
    THIS REPORT MAY CONTAIN COPYRIGHTED MATERIAL.    COPYING AND
DISSEMINATION IS PROHIBITED WITHOUT PERMISSION OF THE COPYRIGHT
OWNERS.

ADMIN
(ENDALL)
END OF MESSAGE                    UNCLASSIFIED

**Exhibit E**

Central Intelligence Agency



Washington, D.C. 20505

**Exhibit F**

3 November 2004

Mr. Matthew D. Pinnavaia
1701 Bush Street 6-P
Oceanside, CA 92054-7137

Reference: P-2002-00396

Dear Mr. Pinnavaia:

This letter completes the partial response we provided you on 16 April 2004 for information about yourself. Your request was processed in accordance with the Privacy Act (PA) and the Freedom of Information Act (FOIA). Our processing included a search for records in existence as of and through the date of our acceptance letter dated 19 June 2002.

The additional documents enclosed at Tab A are being released in segregable form with deletions made on the basis of PA exemptions (j)(1) and (k)(1) and FOIA exemptions (b)(1) and (b)(3). An explanation of the exemptions is enclosed at Tab B for your reference.

You have the right to appeal these determinations as well as those made in our 16 April 2004 letter by addressing your appeal to the Agency Release Panel within 45 days from the date of this letter, in my care. Should you find it necessary to do so, please explain the basis of your appeal.

Sincerely,

*Chris K.*

Scott Koch
Information and Privacy Coordinator

Enclosures

Matthew D. Pinnavaia
1701 Bush Street 6-P
Oceanside CA 92054 7137
{Tel. 760 966 1335}                          **Exhibit G**

11 9 04.

Mr. Scott Koch
Information & Privacy Coordinator
FOIA/PA Division
C.I.A.
Washington DC
{F. > 703 613 3007}

The Agency Release Panel
FOIA/PA Division
C.I.A.
Washington DC 20505

The Agency Release Panel:

   This letter to the CIA Agency Release Panel by FOIA/PA-
Requester M.D. Pinnavaia is a "Letter of Appeal" regarding
CIA-FOIA/PA Request Reference P-2002-00396(M.D. Pinnavaia)
specifically pertaining to the CIA-Response letter of Nov. 3,
04., to M.D. Pinnavaia.

   Basis of Appeal: Requester Pinnavaia is a knowledgeable
American-citizen concerning FOIA/PA exemptions as regards the
federal statute: FOIA/PA.

   Requester Pinnavaia, does request, of the CIA-FOIA/PA
Division the answer to the following question, which does not,
and would not, violate, any, and or all, exemption-provisions
of the FOIA/PA federal statute, and this question relates
directly to Requester Pinnavaia's original CIA-FOIA/PA-Request
of June 5, 2002, whereby Requester Pinnavaia requests
any, and or all, CIA-Document-Records pertaining to M.D.
Pinnavaia, regarding contact between the FBI and the CIA.

   Question: Are the 3-pages that Requester Pinnavaia received
from the CIA-FOIA/PA Division (Nov. 3, 04), an origination from
the FBI?

                    *Matthew D. Pinnavaia*

                    Matthew D. Pinnavaia



Central Intelligence Agency

Washington, D.C. 20505

**Exhibit H**

10 November 2004

Mr. Matthew D. Pinnavaia
1701 Bush Street, 6-P
Oceanside, CA  92054-7137

Reference:  P-2002-00396

Dear Mr. Pinnavaia:

This is in response to your facsimile dated 9 November 2004 and was received in this office on 10 November 2004. You are appealing our 3 November 2004 response to your 5 June 2002 Freedom of Information Act and Privacy Act request for information about yourself.

Specifically, you appealed our determination to deny you access to portions of three pages on the basis of Freedom of Information Act exemption (b)(1)(b)(3) and Privacy Act exemption (j)(1)(k)(1).

Your appeal has been accepted and arrangements will be made for its consideration by the appropriate members of the Agency Release Panel. You will be advised of the determinations made.

In order to afford requesters the most equitable treatment possible, we have adopted the policy of handling appeals on a first-received, first-out basis.

**Exhibit H**

Mr. Matthew D. Pinnavaia

At the present time, our workload consists of approximately 220 appeals awaiting completion. In view of this, some delay in our reply must be expected, but I can assure you that every reasonable effort will be made to complete a response as soon as possible.

Sincerely,

Scott A. Koch
Information and Privacy Coordinator



Central Intelligence Agency

Washington, D.C. 20505

**Exhibit I**

MAY 1 2 2005

Mr. Matthew D. Pinnavaia
1701 Bush Street, 6-P
Oceanside, CA 92054-7137

Reference: P-2002-00396

Dear Mr. Pinnavaia:

This is in response to your facsimile dated 9 November 2004 in which you appealed our response to your 5 June 2002 Freedom of Information Act (FOIA) and Privacy Act (PA) request for information about yourself.

We interpreted your letter as an appeal of our determination to deny you access to portions of three pages on the basis of FOIA exemptions (b)(1) and (b)(3), and PA exemptions (j)(1) and (k)(1).

The Agency Release Panel has considered your appeal and determined on the basis of FOIA exemptions (b)(1) and (b)(3), and PA exemptions (j)(1) and (k)(1), that the portions of the three documents that were previously denied must continue to be denied. Therefore, in accordance with Agency regulations, the Agency Release Panel has denied your appeal. For your information, Agency regulations are set forth in parts 1900 and 1901 of title 32 of the Code of Federal Regulations.

The final paragraph of your letter questioned the origination of the documents that we provided you.

Neither the Freedom of Information Act nor the Privacy Act permits the CIA to release documents originated by other agencies. We can only review and release records we originate.

**Exhibit I**

Mr. Matthew D. Pinnavaia

The Freedom of Information Act provides you the right to seek judicial review of this determination in a United States district court.

Sincerely,

ORIGINAL SIGNED

Scott A. Koch
Executive Secretary
Agency Release Panel

SECRET

CL BY:
CL REASON
DECL ON:
DRV FROM:

**Exhibit I**

++SECRET
C
D                    902701642014ZASR        02-0756668        MIDB
                                                              20020613161411 OPID

/ /  * HUMINT *.                SECRET              FRP: ...

ACTION:                  INFO                STAFF

-----------------------------------------------------

02 0756668     ASR                    PAGE 001                    IN 0756668
                              TOR: 132014Z JUN 02
-----------------------------------------------------

S E C R E T 132015Z JUN 02 STAFF

CITE

TO: DIRECTOR INFO                                RELEASE IN PART
                                                 EXEMPTIONS: (b)(1)
FOR: LIMITED DISSEM        INFO                              (b)(3)
                                                            (j)(1)
SLUGS: WNINTEL OPS RYBAT                                     (k)(1)

SUBJECT: TRACE REQUEST ON MATTHEW DAVID PINNAVAIA            DATE: NOV 2004

REF: NONE

TEXT:

     1. ACTION REQUIRED: REQUEST TRACES ON MATTHEW DAVID PINNAVAIA
PER BELOW.

     2. REQUEST TRACES ON MATTHEW DAVID ((PINNAVAIA)), DPOB
20MAY1958, HUNTINGTON, NEW YORK.  PINNAVAIA CURRENTLY LIVES IN
OCEANSIDE, CA.  SSN 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.

     3. REQUEST ADDEE TRACES ON PINNAVAIA.  GIVEN THAT THE LATTER IS
A US CITIZEN                                       STATION TRACES WERE NEGATIVE.
REGARDS.

     4. FILE: NONE              NAME: ((PINNAVAIA))
, MATTHEW DAVID; SEX: M; DOB: 20MAY58; POB: HUNTINGTON; CIT: NEW
YORK; LOC: OCEANSIDE, CA;  TEXT: SENT LETTER TO SADDAM HOSAYN; PAST
RELATIONSHIP WITH IRAQI AMBASSADOR NIZAR HAMDOON;

                              SECRET
                              [11]



SS    CL BY:        CL REASON:

~~SECRET~~

CABLETYPE:

END OF MESSAGE                    SECRET

**Exhibit I**

[12]

~~SECRET~~

CL BY:
CL REASON:
DECL ON:
DRV FROM:

++SECRET++RYBAT
C  79900DIRR        J23034172141Z ASP      02-0874822                                          **Exhibit I**
D                                                                        20020621101421 DFID

/ /  * HUMINT *.              SECRET              FRP:
                                                  STAFF

CONF:              INFO:

02 0874822     ASP                    PAGE 001
                            TOT: 211414Z JUN 02     DIRECTOR J23034

S E C R E T
STAFF
TO:  PRIORITY                      INFO   711414Z DIRECTOR J23034

FROM:  LIMITED DISSEN              INFO

SLUGS:  HNINTEL OPS RYBAT

SUBJECT:  TRACE RESPONSE ON MATTHEW DAVID PINNAVAIA

REF:                       02 0756668 1

TEXT:

    1.  ACTION REQUIRED:  PLEASE SEE BELOW.

    2.  HQS GREATLY APPRECIATED REF ON MATTHEW DAVID
((PINNAVAIA)).

                          BEST REGARDS.
       FILE:              CL BY:         CL REASON:
HQCOORD:
CABLETYPE:
RELNO:
ORIG:

END OF MESSAGE               SECRET

                                   RELEASE IN PART
                                   EXEMPTIONS:  (b)(1)
                                        (b)(3)
                                        (j)(1)
                                        (k)(1)
         [13]                      DATE: NOV 2004

                          SECRET